UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

FILED

NOV 2 1 2013

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

MINNESOTA LAWYERS MUTUAL )
INSURANCE COMPANY )
333 South Seventh Street, Suite 2200 )
Minneapolis, Minnesota 55402 )
)
Plaintiff, )
)
v. )   Case No. 2:13 cv 654
)
RICHARD J. TAVSS )
555 East Main Street )
Suite 1400 )
Norfolk, Virginia 23510 )
)
and )
)
TAVSS, FLETCHER, MAIDEN )
 & REED, P.C. )
555 East Main Street )
Suite 1400 )
Norfolk, Virginia 23510 )
)
Defendants. )

**COMPLAINT**
(Declaratory Judgment)

Plaintiff Minnesota Lawyers Mutual Insurance Company, by counsel, by and for its cause

of action against Defendants Richard J. Tavss ("Tavss") and Tavss, Fletcher, Maiden & Reed,

P.C. ("Tavss Fletcher"), states and alleges as follows:

**JURISDICTION**

1.  This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332.

**VENUE**

2.  Venue is appropriate in this Circuit pursuant to 28 U.S.C. § 1391(b)(2).

## PARTIES

3.      Plaintiff Minnesota Lawyers Mutual Insurance Company ("MLM") is a mutual insurance company organized under the laws of Minnesota with its principal place of business in Minnesota.

4.      Defendant Richard J. Tavss is a resident of Virginia. At all times relevant hereto Tavss was a principal of Tavss Fletcher and was an agent and employee of Tavss Fletcher.

5.      Defendant Tavss Fletcher is a law firm in Norfolk, Virginia.

## FACTS COMMON TO ALL COUNTS

6.      MLM issued a Lawyers Professional Liability Policy, Policy. No. 181619 (the "Policy"), for the Policy Period from May 1, 2012 to May 1, 2013, to Tavss, Fletcher, Maiden & Reed, P.C., with limits of liability as stated in the Declarations of $5,000,000 per claim and $5,000,000 aggregate. Tavss is an individual insured under the Policy. MLM mailed the policy to Tavss Fletcher in Norfolk. All coverage afforded by the Policy is subject to certain endorsements, conditions, definitions, and exclusions. A copy of the Policy, including the Declarations and Application for Coverage, is attached as Exhibit A hereto.

7.      The Federal Deposit Insurance Corporation as Receiver for Bank of the Commonwealth ("FDIC-R") is the appointed receiver for Bank of the Commonwealth (the "Bank").

8.      By letter dated February 22, 2013, FDIC-R sent Tavss Fletcher a "Notice of Potential Damages" (the "Demand Letter"), a copy of which is attached as Exhibit B hereto. MLM is providing Tavss and Tavss Fletcher with a defense to the claims set forth in the Demand Letter under a reservation of rights.

***Allegations Of The Demand Letter***

9.     The Demand Letter alleges that the Bank was a long-term client of Tavss Fletcher and that Tavss served as a director of the Bank and its holding company from 1988 until the Bank closed, and FDIC-R was appointed receiver, in 2011.  The Demand Letter further alleges that from 2009 to mid-2011, Tavss Fletcher billed the Bank nearly $2 million for work the firm did for the Bank; that Tavss personally approved loans to Bank borrowers as a member of the Bank's Executive Loan Committee ("Loan Committee") and as a director; that he sat on other Bank committees for which he was paid an annual compensation; that he owned Bank stock options; that he was a part-owner of a building that the Bank leased from him and various partners and entities from 1998 to 2011; and that the Bank funded several Regulation O loans (loans by a bank to an executive officer, director, or principal shareholder) to Tavss and his law firm. Demand Letter pp. 1-2.

10.     The Demand Letter further alleges that Tavss and Tavss Fletcher had "inherent conflicts of interest" in their representation of the Bank; that as a director and Loan Committee member, Tavss approved "grossly negligent loans that subsequently went into default, for which the Firm was later hired to restructure, negotiate settlements, pursue foreclosure actions, or sue defaulted borrowers". Demand Letter p. 5.

11.     The Demand Letter seeks $11.9 million in damages, based on particularized allegations regarding two loan transactions.

***Charles Falk Transactions***

12.     The Demand Letter alleges that on June 27, 2008, Tavss Fletcher acted as closing attorney for the Bank on three loans: two for $7.5 million and $1.5 million, both to the Charles Falk's ("Falk") wholly owned company, Hatteras Lane Corporation ("Hatteras Lane"), and a two

million dollar loan to Falk's son (collectively, the "Falk loans"). The Demand Letter alleges that Falk, his family, and related entities were long-term clients of Tavss Fletcher; that from the $7.5 million dollar loan proceeds, Tavss Fletcher was paid over $160,000 for "past due and future reserves for legal invoices/fees that the Falks owed to the firm" for work unrelated to Bank transactions. Demand Letter p. 2.

13.     The Demand Letter alleges that Tavss knew that the Board of Directors ("Board") had not approved the Falk loans when Tavss Fletcher closed them; and that Tavss was present at the meeting at which the Board declined to approve them; that the loan officer, Simon Hounslow ("Hounslow"), "communicated to Tavss his concerns about several aspects of the loan commitments and the prudence of funding the loans"; that Hounslow was under the impression that the Board had approved the loans; and that "there is no indication that Tavss advised him that the Board had not"; and that two months later, Tavss Fletcher closed the loans. Demand Letter p. 2.

14.     The Demand Letter alleges that it was to Tavss' and Tavss Fletcher's benefit to close the Falk loans "because they paid off substantial, but unrelated, legal invoices the Falks owed to the firm and provided $25,000 in 'pre-funding' of any Falk legal fees that might, in the future, be due to the Firm." Demand Letter p. 2. The letter further alleges, "[i]in allowing this closing to take place, Tavss and the Firm breached their duties to the Bank and were negligent and grossly negligent **because they put the interests of the Firm and one client, the Falks, above those of another client, the Bank.**" Demand Letter pp. 2-3 (emphasis added). The Demand Letter further asserts that there is "no evidence that the Firm obtained the required conflict of interest waivers from either the Bank or the Falks prior to closing these loans." Demand Letter p. 3.

*Pretty Lake Village, LLC*

15.     The Demand Letter alleges that the Bank hired Tavss, Tavss Fletcher, and other attorneys at Tavss Fletcher to assist with restructuring a loan to a troubled borrower. Demand Letter p. 3. According to the Demand Letter, the Virginia State Corporation Commission ("SCC") had criticized the loan, stating that none of the guarantors had sufficient liquidity to service the debt, and that the project was not considered viable under current market conditions. Demand Letter p. 3. The Demand Letter alleges that the Bank thereafter declared the loan substandard and wrote off and charged off $2.193 million of the loan. Demand Letter p. 3.

16.     The Demand Letter alleges that while invoicing the Bank for nearly $20,000 of legal work, and at a time when Tavss was a member of the Bank's board of directors, the Firm and Tavss advised the Bank to forbear and release the borrower and guarantors of the loan from at least $10.57 million of personal liability, issue new loans to a new borrower and to the guarantors, which loan proceeds paid down the Pretty Lake loan, in violation of the Bank's lending policies and safe and sound banking practices. Demand Letter pp. 4-5.

17.     The Demand Letter alleges that Tavss and Tavss Fletcher had inherent conflicts of interest with respect to their representation of the Bank, and that Tavss continued to act in "irreconcilable and conflicting capacities -- as a director approving risky and improvident loans for which he received compensation, as a lawyer whose firm closed these same risky loans and received compensation, and as a lawyer responsible for working out the same troubled loans when they became delinquent, for which he and others at the Firm received compensation." Demand Letter p. 6.

18.     The Demand Letter seeks $11.9 million in damages arising out of the Charles Falk and Pretty Lake transactions. Demand Letter p. 6.

*Relevant Policy Provisions*

*Defense and Settlement*

19.     The policy provides, in the DEFENSE AND SETTLEMENT PROVISIONS section, in relevant part, that:

"We have the exclusive right to investigate, negotiate and defend CLAIMS seeking DAMAGES against the INSURED for which this policy provides coverage."

\* \* \*

*Claims Made Provisions*

20.     The policy provides, in the CLAIMS-MADE PROVISIONS section, in relevant part, that in order for a claim to be covered,

"The act, error or omission giving rise to the CLAIM must have occurred:

(1)     during the POLICY PERIOD, or
(2)     prior to the POLICY PERIOD and on or after the PRIOR ACTS RETROACTIVE DATE, if the INSURED had no knowledge of facts which could reasonably support a CLAIM at the effective date of this POLICY.

A CLAIM is deemed made when:

(1)     A demand is communicated to any INSURED for DAMAGES or PROFESSIONAL SERVICES;"

\* \* \*

*Definitions*

21.     The Policy further provides, at Page 2, in relevant part, that:

"CLAIM(S) means:

(1)     A demand communicated to any INSURED for DAMAGES or PROFESSIONAL SERVICES;"

\* \* \*

"DAMAGE(S) means monetary judgments or monetary settlements.  DAMAGES does not include any of the following:

* * *

(2)     punitive or exemplary damages assessed against any INSURED, whether or not allowed by statute or common law;

* * *

(4)     the portion of any award, judgment or settlement that does not compensate for loss;"

* * *

*Exclusions*

22.     The Policy further provides, at Page 3, in relevant part, that:

"This policy does not afford coverage for the following:

* * *

(3)     any CLAIM arising out of PROFESSIONAL SERVICES rendered by any INSURED in connection with any business enterprise:

        (a)     owned in whole or in part;
        (b)     controlled directly or indirectly; or
        (c)     managed

By any INSURED, and where the claimed DAMAGES resulted from conflicts of interest with the interest of any client or former client or with the interest of any person claiming an interest in the same or related business or enterprise."

*Defense Under Reservation Of Rights*

23.     The MLM policy provides for a defense to "claims", not simply lawsuits. Pursuant thereto, and at all times relevant hereto, MLM has provided Tavss and Tavss Fletcher with a defense to the claims set forth in the FDIC Demand Letter under a reservation of rights.

24.     An actual controversy exists between MLM, which has reserved its rights asserting in part the application of the Business Enterprise Exclusion, and MLM's insureds who have invoked their rights under the Policy by submitting the claims to MLM.

25.     Until such time as MLM's rights and duties as to defense of the claims set forth in the Demand Letter are declared, MLM is not able to determine its responsibilities under the Policy as to defense and settlement; and the insureds are unable to ascertain their rights and duties under the Policy, as well as the availability of insurance with regard to the claims. The fact that the Policy is a declining limits policy, i.e., coverage for indemnity is reduced by expenditures for defense, adds to that uncertainty.

## COUNT I
### (Declaration Of Rights As To Duty To Defend)

26.     Plaintiff incorporates the allegations contained in Paragraphs 1-25 of this Complaint as if set forth fully herein.

27.     The Demand Letter alleges that professional services were rendered by Tavss, Mayo, and Tavss Fletcher in connection with the Bank, and that Tavss controlled the Bank directly or indirectly as a director of the Bank and its holding company from 1988 until the Bank closed, and as a member of the Bank's Loan Committee and other Bank committees, in approving the loans that are the subject of the Demand Letter. The Demand Letter alleges damages resulting from conflicts of interest with the interests of the Bank.

28.     As such, there is no potentiality for coverage for any damages sought under the Demand Letter, and MLM has no duty to defend the claims set forth therein, pursuant to Exclusion 3 of the Policy, excluding from coverage "any CLAIM arising out of PROFESSIONAL SERVICES rendered by any INSURED in connection with any business enterprise: (a) owned in whole or in part; (b) controlled directly or indirectly; or (c) managed

8

[b]y any INSURED, and where the claimed DAMAGES resulted from conflicts of interest with the interest of any client or former client or with the interest of any person claiming an interest in the same or related business or enterprise".  Because Exclusion 3 applies to claims in connection with such control by any insured, Exclusion 3 precludes coverage for claims against any insured where the damages are alleged to result from conflicts of interest with the interest of any client. As such, MLM has no duty to defend other Tavss Fletcher attorneys with regard to the claims set forth in the Demand Letter.

WHEREFORE, Plaintiff prays this Court order the following relief:

a.    Determining and adjudicating the rights and liabilities of the parties under Plaintiff's policy of insurance with regard to the duty to defend;

b.    Declaring that Plaintiff has no duty to defend Tavss, Tavss Fletcher, or other Tavss Fletcher attorneys with respect to the claims set forth in the Demand Letter; and

c.    For such other and further relief as is just and equitable.

Dated:  November 20, 2013                    Respectfully submitted,

MINNESOTA LAWYERS MUTUAL
INSURANCE COMPANY
By Counsel

SANDS ANDERSON PC

_____
Danny M. Howell     (VSB No. 30352)
dhowell@sandsanderson.com
Sarah A. Bucovetsky  (VSB. No. 78322)
sbucovetsky@sandsanderson.com
1497 Chain Bridge Road, Suite 202
McLean, VA  22101
(703) 893-3600

(703) 893-8484 (fax)

*Counsel for Plaintiff Minnesota Lawyers Mutual Insurance Company*